IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONNIE BROWN,

      Plaintiff,                    No. CIV S-08-2286 FCD GGH P

      vs.

SUZANN HUBBARD, et al.,

      Defendant.               FINDINGS & RECOMMENDATIONS

_____/

I. <u>Introduction</u>

      Plaintiff, a former state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are defendants' motion for summary judgment filed on April 22, 2010. Plaintiff filed an opposition on June 4, 2010. For the reasons that follow, the court recommends that the motion be granted and this case closed.

II. <u>Complaint</u>

      Plaintiff alleges that because he is visually impaired, doctors have ordered that he be provided with assistance with grooming, dressing and eating. Plaintiff also alleges that doctors have ordered that he be provided with a lower bunk on a lower tier with no stairs in his path of travel. Plaintiff states that while housed at the California Medical Facility (CMF) and Deuel Vocational Institute (DVI), these orders were disregarded in and about September 2008.

1

As a result plaintiff alleges violations of the Eighth Amendment and American with Disabilities Act (ADA). Plaintiff also states he was placed in Administrative Segregation (Ad. Seg.) for two days without due process. As relief, plaintiff seeks money damages and injunctive relief in the form of an order that the physicians' orders be complied with.

III. Motion for Summary Judgment

### Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards

1  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
2  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than
3  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record
4  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
5  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

6         On February 26, 2009, the court advised plaintiff of the requirements for opposing
7  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
8  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.
9  1988).

10        The above advice would, however, seem to be unnecessary as the Ninth Circuit
11 has held that procedural requirements applied to ordinary litigants at summary judgment do not
12 apply to prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the
13 district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se*
14 inmates and ... avoid applying summary judgment rules strictly."  Id. at 1150.  No example or
15 further definition of "liberal" construction or "too strict" application of rules was given in Ponder
16 suggesting that any jurist would know inherently when to dispense with the wording of rules.
17 Since the application of any rule which results in adverse consequences to the pro se inmate
18 could always be construed in hindsight as not liberal enough a construction, or too strict an
19 application, it appears that only the essentials of summary judgment, i.e., declarations or
20 testimony under oath, and presentation of evidence not grossly at odds with rules of evidence,
21 apply in this dichotomous litigation system where one side must obey the written rules and the
22 other side substantially absolved from doing so.

23 IV.  Undisputed Facts

24        The following of defendant's undisputed facts (DUF) are either not disputed by
25 plaintiff, or following the court's review of the evidence submitted, have been deemed
26 undisputed:

4

1          At all relevant times plaintiff was a state prisoner in the custody of CDCR.  DUF #1.  To have a documented "vision impairment" while in custody, an inmate must be permanently blind, or have a vision impairment not correctable to central vision acuity of 20/200 or better, even with corrective lenses, cannot walk 100 yards on a level surface or climb a flight of stairs without a pause.  DUF #9.  Such an impairment may require a wheelchair, cane, prosthesis or walker, depending on the need of the individual.  Id.

          Inmates verified to have a disability are referred to the Classification Services Representative for review and endorsement to a specific disabled institution.  DUF #14.  CMF is a designated disabled institution and DVI's reception center facility is designated to provide temporary housing for disabled inmates.  Id.

          In January 2000, plaintiff's vision was impaired, but because the impairment could be corrected with corrective lenses, plaintiff placement status was not affected.  DUF #25.  In June 2002, plaintiff's vision problems worsened and plaintiff was designated as vision impaired.  DUF #25.  In September 2006, plaintiff's designation as vision impaired was removed.  DUF #26.

          In July 2008, plaintiff was returned to custody after a parole violation and again designated as vision impaired and received vision impaired placement status.  DUF #27.  Plaintiff was provided with a chrono for a vision impairment vest, no stairs and a lower bunk.  Id.  In August 2008, it was recommended that plaintiff be given assistance for feeding, bathing and grooming.  DUF #28; MSJ, Exh. D at 8.  However, the Chief Medical Officer denied the recommendations for assistance for feeding, bathing and grooming and instead provided plaintiff a chrono for a ground floor cell, bottom bunk and use of a vision cane.  DUF #28; MSJ, Exh. D at 7.

          On September 16, 2008, plaintiff was transferred to CMF for two days.  DUF #32.  No lower bunk was available in general population for the two days while plaintiff was in CMF so plaintiff was placed in Ad. Seg., pending the availability of a lower bunk.  Id.

1   On September 18, 2008, plaintiff was transferred to DVI. DUF #33. Also on
2 September 18, 2008, plaintiff was granted accommodations for a lower tier, lower bunk, a vision
3 impairment vest and a tapping cane. DUF #29. These accommodations were to remain in effect
4 for one year. Id.

5   Plaintiff mailed the instant civil rights complaint on September 19, 2008. Petition
6 at 6. Plaintiff was transferred back to CMF on October 2, 2008, where he stayed until transferred
7 to court on October 29, 2008. DUF #33. Plaintiff returned to CMF on December 2, 2008. DUF
8 #34. Plaintiff was paroled on September 20, 2009. DUF #36.

9   Plaintiff does not allege any specific injury in his complaint.

10 V. Disputed Facts

11   There are few disputed facts in this case other than plaintiff believes the form that
12 granted him assistance with feeding, bathing and grooming was in effect and not overruled by the
13 Chief Medical Officer.

14 VI. Eighth Amendment Claim

15   Legal Standard

16   "'Because routine discomfort is part of the penalty that criminal offenders pay for
17 their offenses against society, only those deprivations denying the minimal civilized measure of
18 life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'"
19 Somers v. Thurman, 109 F.3d 614, 623 (1997), quoting Hudson v. McMillian, 503 U.S. 1, 9, 112
20 S.Ct. 995, 1000 (1992) (omitting internal quotations and citations).

21  > [A] prison official cannot be found liable under the Eighth
22  > Amendment for denying an inmate humane conditions of
     > confinement unless the official knows of and disregards an
     > excessive risk to inmate health or safety; the official must both be
23  > aware of facts from which the inference could be drawn that a
     > substantial risk of serious harm exists, and he must also draw the
24  > inference.

25 Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994).

26   However, "[p]rison officials have a duty to ensure that prisoners are provided

6

1  adequate shelter, food, clothing, sanitation, medical care, and personal safety." <u>Johnson v.</u>
2  <u>Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000), citing, inter alia, <u>Farmer v. Brennan</u>, 511 U.S. at 832,
3  114 S. Ct. 1970; <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir.1982) ("[A]n institution's
4  obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with
5  adequate food, clothing, shelter, sanitation, medical care, and personal safety" [internal
6  quotations omitted]).  When an inmate has been deprived of necessities, "the circumstances,
7  nature and duration of a deprivation...must be considered in determining whether a constitutional
8  violation has occurred." <u>Johnson</u>, <u>supra</u>, at 731.  Under the Eighth Amendment, "[c]onditions
9  must not involve the wanton and unnecessary infliction of pain...." <u>Rhodes v. Chapman</u>, 452
10 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981).  However, the Constitution "does not mandate
11 comfortable prisons." <u>Id</u>. at 349, 101 C. Ct. at 2400.

12         To establish a violation of this duty, the inmate must establish that prison officials
13 were deliberately indifferent to a substantial risk of serious harm to the inmates's safety. <u>Farmer</u>,
14 511 U.S. at 834.  The deliberate indifference standard involves an objective and a subjective
15 prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious ...." Farmer
16 at 834 (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)).  Second, the prison
17 official must "know [ ] of and disregard[ ] an excessive risk to inmate health or safety." <u>Id</u>. at
18 837.

19         Analysis

20         The gravaman of plaintiff's complaint is that the disability chronos were not
21 completely followed at all times.  Yet, it is undisputed that regardless if the chronos were
22 followed or not, plaintiff never suffered any injury nor is there any indication that he was faced
23 with inhumane conditions.  Plaintiff's primary claim relates to the chrono for assistance for
24 feeding, bathing and grooming that was never honored.  However, the chrono was never actually
25 approved, and even if it was approved and ignored, plaintiff sets forth no allegations that he
26 suffered any detriment for having to feed, bathe and groom himself, other than presumably these

activities were difficult.  Allegations of not having a caretaker based on plaintiff's condition do not rise to the level of a Eighth Amendment violation as plaintiff has failed to show an excessive risk to his safety.

Likewise, plaintiff's claim that his lower bunk, lower tier chrono were not always honored fails to support a constitutional violation.  It appears that when a lower bunk was not available, plaintiff was placed in Ad. Seg., yet plaintiff does not allege that Ad. Seg. forced him into an upper bunk or an upper tier.  The undersigned believes that placement in Ad. Seg., means there is only one bed, so plaintiff had a lower bunk.

Even if all of plaintiff's allegations were accurate, he simply describes when prison officials failed to follow prison regulations to enforce his chronos without providing any additional factual support.  Yet, failing to follow a chrono, without providing any additional allegations will not support an Eighth Amendment claim.  Regardless, nothing in plaintiff's complaint or opposition even remotely demonstrate that he was denied the minimal civilized measure of life's necessities, even given plaintiff's circumstances.  Thus, these claims should be denied.

VII.   American with Disabilities Act

Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir.2002).  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 1955, 141 L.Ed.2d 215 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir.1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir.1996).

In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either

excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

A "disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).

Plaintiff may bring a claim under Title II of the ADA against state entities for injunctive relief and damages. See Phiffer v. Columbia River Correctional Institute, 384 F.3d 791 (9th Cir. 2004). However, he cannot seek damages pursuant to the ADA against the defendants in their individual capacities. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

Plaintiff's claims under the ADA are difficult to discern. According to plaintiff, prison officials provided him with the chronos necessary for his disabilities, but then individual defendants did not follow through on certain occasions. Plaintiff states in the complaint that he is suing all individuals in their individual capacities. Complaint at 2.

To the extent he intends to make claims of violations of the ADA against any individual defendant, such claims may proceed only to the extent that plaintiff has sued such individual defendants in their official capacities. Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003). As plaintiff is no longer incarcerated and only sued the defendants in their individual capacities, these claims must be denied.

To the extent that plaintiff named the director of CDCR, which could be construed as a proper defendant,[1] plaintiff has still failed to set forth sufficient facts to warrant damages. Plaintiff has not shown that he was excluded from any benefits due to his disability.

---

[1] Though, plaintiff is suing the director of CDCR in her individual capacity. Complaint at 1-2.

1   When plaintiff was transferred to another prison and a lower bunk and tier were not available, he
2   was placed in Ad. Seg. with a lower bunk.  Plaintiff does not even allege that he was denied any
3   benefits due to his disability, rather that the accommodations he desired were not available.  Not
4   only did prison officials accommodate plaintiff's disabilities, based on the allegations from his
5   complaint it was only for two days.  In plaintiff's opposition to summary judgment he makes
6   additional allegations that after the dates discussed in the complaint, there was still a failure to
7   fully comply with his chronos.  Yet, plaintiff does not supply any details on what he was not
8   provided or what he was excluded from.  These vague assertions are insufficient to survive
9   summary judgment.  Nor do plaintiff's claims that the failure to provide a caretaker to feed, bathe
10  and groom him support a violation of the ADA.
11          These claims should be dismissed.
12  VIII.  Administrative Segregation
13          Plaintiff alleges a due process violation for the two days he spent in Ad. Seg.
14  while at CMF as he was never provided a hearing.  However, plaintiff alleges no specific
15  deprivations as a result of spending two days in Ad. Seg.
16          "The requirements of procedural due process apply only to the deprivation of
17  interests encompassed by the Fourteenth Amendment's protection of liberty and property."
18  Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972).  State statutes and prison
19  regulations may grant prisoners liberty interests sufficient to invoke due process protections.
20  Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532 (1976).  However, the Supreme Court
21  has significantly limited the instances in which due process can be invoked.  Pursuant to Sandin
22  v. Conner, 515 U.S. 472, 483, 115 S.Ct. 2293 (1995), a prisoner can show a liberty interest under
23  the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement
24  that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison
25  life." Id. at 484.
26          In this case, plaintiff has failed to establish a liberty interest protected by the

Constitution because he has not alleged, as he must under Sandin, facts related to the conditions or consequences of his disciplinary hearings which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." Id. at 486. For example, in Sandin, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption in his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody. Id. at 486-87.

To establish a due process violation, plaintiff must first show the deprivation imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 483-84. Plaintiff has failed to allege any facts from which the court could find there were atypical and significant hardships imposed upon him as a result of defendants' actions. Plaintiff must allege "a dramatic departure from the basic conditions" of his confinement that would give rise to a liberty interest before he can claim a violation of due process. Id. at 485. Plaintiff has not; therefore the court finds that plaintiff has failed to allege a liberty interest, and thus, has failed to state a due process claim. May v. Baldwin, 109 F. 3d 557, 565 (9th Cir. 1997).

As plaintiff has not even alleged any atypical and significant hardships, summary judgment should be granted for this claim.

IX. Qualified Immunity & Injunctive Relief

Because the court has found that the conduct alleged by plaintiff does not state a constitutional deprivation, the court need not address defendants' argument for qualified immunity.

To the extent that plaintiff has requested injunctive relief, any such claim is denied as plaintiff has failed to state a constitutional deprivation and plaintiff is no longer

incarcerated, so the claims are moot.

X. Conclusion

   Plaintiff's lawsuit is essentially frivolous and/or spiteful. Accordingly, IT IS HEREBY RECOMMENDED that defendant's April 22, 2010, motion for summary judgment (Doc. 36), be granted and this case closed.

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 12/16/2010

            /s/ Gregory G. Hollows

            UNITED STATES MAGISTRATE JUDGE

GGH: AB
brow2286.sj